Filed 9/23/13; pub. order 10/15/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARIBEL MENDEZ, Plaintiff and Respondent, v. MID-WILSHIRE HEALTH CARE CENTER, Defendant and Appellant. | B243144 (Los Angeles County Super. Ct. No. BC449964) |

APPEAL from an order of the Superior Court of Los Angeles County, Alan S. Rosenfield, Judge. Affirmed.

Beach Whitman Cowdrey; Beach Cowdrey Owen, Thomas E. Beach, Sean D. Cowdrey and Darryl C. Hottinger for Defendant and Appellant.

Law Offices of Ramin R. Younessi, Ramin R. Younessi and Kaveh S. Elihu for Plaintiff and Respondent.

_____

## INTRODUCTION

Defendant Mid-Wilshire Health Care Center (Mid-Wilshire) appeals from an order denying its motion to compel arbitration and to stay this wrongful termination action filed by plaintiff Maribel Mendez.  We hold that the arbitration provision in the collective bargaining agreement governing Mendez's employment does not apply to Mendez's statutory discrimination claims, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mid-Wilshire hired Mendez as a nurse's assistant in January 1985, when she was 42 years old.  Mendez worked at Mid-Wilshire's skilled nursing facility in Los Angeles. She was a union member and served on the union bargaining committee.

In February 2009 Mendez, then 66 years old, experienced vaginal bleeding.  She sought medical care from a gynecologist who provided her with a note stating she could return to work on March 2, 2009.  On that date, Mendez gave the note to Betty Aguilar, who Mendez alleged was Mid-Wilshire's sole principal with the "ability to hire, fire, discipline, demote and grant raises."  Aguilar told Mendez to go home and said she would call Mendez on March 4.  Aguilar did not call Mendez on March 4, so on March 5 Mendez called Aguilar, who asked to speak to Mendez in person.  Feeling uncomfortable, Mendez called a union representative who advised Mendez not to meet with Aguilar and stated he would arrange a meeting with Aguilar.

On March 17, 2009 Mendez, the union representative, and Aguilar met.  Aguilar terminated Mendez's employment.[1]  The union representative subsequently tried unsuccessfully to get Mendez her job back.

---

[1]    The appellate record sheds no light on the reason for the termination.

Mendez filed this action on November 19, 2010 against Mid-Wilshire and Aguilar, alleging seven causes of action. Four were common law claims for breach of the covenant of good faith and fair dealing, wrongful termination in violation of public policy, intentional infliction of emotional distress, and retaliation. Three were statutory causes of action for violations of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12940 et seq.) based on disability discrimination, age discrimination, and failure to provide reasonable accommodation. Mendez subsequently dismissed Aguilar from the case. Mid-Wilshire filed a motion to compel arbitration and stay the action, arguing that Mendez's claims were subject to the grievance and arbitration procedure set forth in the collective bargaining agreement between Mid-Wilshire and the union.

Article 19 of the collective bargaining agreement, entitled "**GRIEVANCE AND ARBITRATION**," provides:

"**Section 1 – General Principles**

"A.    The following procedure shall be applied and relied upon by both parties as the sole and exclusive means of adjustment of and settling grievances.

"B.    Both parties agree that, prior to the filing of any grievance, except for grievances protesting discharge or suspension, an informal discussion may be held in an attempt to resolve the dispute.

"**Section 2 – Step One**

"All grievances, except those involving discharge and suspension shall be initiated at Step One. . . .

"**Section 3 – Step Two**

"A.    In order for a grievance to be considered further, an appeal shall be filed with the Administrator, at the facility, within seven (7) calendar days after receipt of the Step One response. In addition, grievances involving discharge and suspension shall be introduced at this Step of the Grievance and Arbitration Procedure.

"B.    Within seven (7) calendar days after receipt of the Step One appeal or newly initiated grievance, a meeting shall be held with the Union Business

3

Representative, and the Administrator or designee.  Within five (5) calendar days after such meeting, the Administrator or his/her designee, on behalf of the Employer, shall respond, in writing, to the Union Business Representative.  If no answer is given the grievance will be deemed to have been denied.

"**Section 4 – Step Three Mediation**

"After compliance with Sections 2 and 3 above the Company and the Union may within five (5) days arrange to meet with a representative of the Federal Mediation and Conciliation Service (FMCS) or any other mutually-agreed upon source of a mediator, who shall attempt to resolve the dispute and, if mediation is not successful, shall render a non-binding advisory finding based on the facts of the case.

"**Section 5 – Step Four Arbitration**

"A.     In the event the grievance remains unresolved, the grieving party may appeal the grievance to arbitration.  Written notice of such appeal must be made within seven (7) calendar days after receipt of the Step Three response.  All such appeals shall be sent by certified mail, and the date of mailing shall establish the timeliness of appeal.  [¶] . . .

"C.     The arbitrator shall have no power to alter, amend, change, add to or subtract from any of the terms of this Agreement, but shall determine only whether or not there has been a violation of the Agreement in respect to the alleged grievance and remedy.  The decision or award of the arbitrator shall be based solely upon the evidence and arguments presented to him by the respective parties in the presence of each other.  The decision or award of the arbitrator within the limits herein prescribed shall be made in writing and shall be final and binding upon the Employer, the Union, and the employees affected.  Costs of the arbitrator shall be shared equally by the Employer and the Union."

Mendez opposed Mid-Wilshire's motion to compel arbitration.  She argued that she was not a party to the agreement and that the terms of the agreement did not encompass her FEHA claims.

4

At the hearing on the motion, the trial court announced its tentative decision to deny Mid-Wilshire's motion to compel arbitration of Mendez's FEHA claims based on the leading California case in this area of the law, *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430 (*Vasquez*). The trial court also stated it intended to grant the motion to compel arbitration of Mendez's remaining claims, to stay the arbitration, and to try the FEHA claims first. Because neither party cited *Vasquez*, the court continued the hearing to allow the parties to submit additional briefing.

In its supplemental brief, Mid-Wilshire argued that the collective bargaining agreement was specific enough to require arbitration of Mendez's FEHA claims and that *Vasquez* "is suspect and has been implicitly overruled" by the United States Supreme Court in *AT&T Mobility LLC v. Concepcion* (2011) ___ U.S. ___ [131 S.Ct. 1740, 179 L.Ed.2d 742] (*Concepcion*). Mid-Wilshire argued that, in light of recent United States Supreme Court arbitration decisions, *Vasquez* "is . . . contrary to the [Federal Arbitration Act (FAA)]" and "is no longer controlling law," that the FAA applied to the employment agreements of skilled nursing facilities, and that the trial court did not have the authority to stay arbitration and try non-arbitrable claims first. Mendez argued that the collective bargaining agreement was not subject to the FAA and that *Concepcion* was not controlling. Relying on *Vasquez*, Mendez argued that the collective bargaining agreement "is not sufficiently specific to constitute a waiver of [her] right to a jury trial on her FEHA claims."

At the continued hearing the trial court stated: "There is a considerable vagueness in Article 19 with regard to arbitration of a grievance. I don't know that grievance or a termination under circumstances that justify a statutory cause of action under FEHA or otherwise are adequately defined as being embraced within that arbitration process . . . ." "Here, I don't find that there is sufficient certainty with regard to the subjects to be arbitrated. And, accordingly, I'm denying the motion in this case on the contract . . . to send this matter to arbitration." The court also cited the following language in subparagraph A of section 5 of Article 19: "In the event the grievance remains unresolved, the grieving party may appeal the grievance to arbitration." The court

5

emphasized, "It doesn't say 'shall.' It says 'may.' As far as I'm concerned, that doesn't impose a contractual mandate to pursue arbitration." The trial court stated in its written order that it was denying Mid-Wilshire's motion to compel arbitration "on the grounds that the arbitration provision within the Collective Bargaining Agreement is vague as to whether arbitration is mandatory." The trial court continued the trial, re-opened discovery, and scheduled a case management conference. Mid-Wilshire filed this timely appeal.

## DISCUSSION

A. *Applicable Law and Standard of Review*

"There is a strong public policy in favor of arbitration. [Citations.] [¶] Under both the [FAA] [citation] and the California Arbitration Act (CAA [citation]), arbitration agreements are valid, irrevocable and enforceable except upon grounds that exist for revocation of the contract generally. [Citations.]"[2] (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 701-702, fn. omitted.) "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' [Citations.]" (*AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 648 [106 S.Ct. 1415, 89 L.Ed.2d 648]; see *Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1518 ["[b]ecause arbitration is a contractual matter, a party that has not agreed to arbitrate a controversy cannot be compelled to do so"].)

A trial court must grant a petition to compel arbitration "if it determines that an agreement to arbitrate the controversy exists." (Code Civ. Proc., § 1281.2; see *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59.) There is, however, "no public policy in favor of forcing arbitration of issues the parties have not agreed to

---

**2**     The parties dispute whether the FAA applies in this case. We assume for purposes of this appeal that it does.

6

arbitrate." (*Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1505.) Thus, in ruling on a motion to compel arbitration, the court must first determine whether the parties actually agreed to arbitrate the dispute. (*Avery*, *supra*, at p. 59; *Gorlach*, *supra*, at p. 1505.) General principles of California contract law guide the court in making this determination. (*Gorlach*, *supra*, at p. 1505; see *Sparks v. Vista Del Mar Child & Family Services*, *supra*, 207 Cal.App.4th at p. 1518 ["the issue of whether the parties agreed to arbitration is ordinarily decided under state law"]; *Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683 ["question of whether the parties agreed to arbitrate is answered by applying state contract law even when it is alleged that the agreement is covered by the FAA"].)

"Ordinarily, we review a denial of a petition to compel arbitration for abuse of discretion. [Citation.] However, where the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo. [Citation.]" (*Gorlach v. Sports Club Co.*, *supra*, 209 Cal.App.4th at p. 1505; see *Flores v. Axxis Network & Telecommunications, Inc.* (2009) 173 Cal.App.4th 802, 805 [review of order denying petition to compel arbitration is de novo].)


   B.     *Mendez Was Bound by a Collective Bargaining Agreement*

Before we reach the merits of Mid-Wilshire's contentions, we address Mendez's assertion that the trial court's decision must be affirmed, regardless of the language of the collective bargaining agreement, because she was not a party to either of the two collective bargaining agreements relied on by Mid-Wilshire. The record does not support her assertion.

One of the collective bargaining agreements is between Mid-Wilshire and SEIU Local 434B and states in Section A of Article 32: "This Agreement shall be effective as of January 1, 2006 and shall remain in full force and effect through and including June 15, 2008, and from year to year thereafter: provided, however that either party may serve written notice on the other at least ninety (90) days prior to the contract expiration date of its desire to cancel, amend or modify this Agreement." The other collective

7

bargaining agreement is between Mid-Wilshire and United Long-Term Care Workers' Union Local 6434, signed by Mid-Wilshire on June 25, 2009 and the Union trustee and bargaining committee members on July 15, 2009. This contract covers the period March 15, 2009 through June 15, 2011.[3] The grievance and arbitration provisions in both agreements are identical.

Mendez argues that neither collective bargaining agreement applies to her claims because on March 17, 2009, the date Mid-Wilshire terminated her, the first collective bargaining agreement was no longer in effect and the second collective bargaining agreement was not yet approved. The first collective bargaining agreement, however, states that it will remain in effect after June 15, 2008, "from year to year," unless terminated on 90 days notice by cancellation, amendment, or modification. There is nothing in the record indicating that either side ever gave any such notice, or that the first collective bargaining agreement was not in effect on March 17, 2009. Moreover, while it is true that Mid-Wilshire had already fired Mendez when the second collective bargaining agreement was executed, the new agreement applied retroactively to a date prior to Mendez's termination. Mendez does not argue that a collective bargaining agreement cannot apply retroactively.

Mendez also emphasizes the absence of her signature on the line reserved for her, as a member of the union bargaining committee, on the second collective bargaining agreement. The absence of Mendez's signature on the second collective bargaining agreement is inconsequential. Mendez does not deny that she was a member of the union. In fact, she immediately called her union representative when Aguilar asked to meet with her in person. The union representative scheduled a meeting with Aguilar, accompanied her to the meeting, and tried to help Mendez get her job back. Thus, as a

---

**3**     There is a minor inconsistency in the second agreement. Although the cover page states that the beginning date is March 15, 2009, Section A of Article 32 provides, "This Agreement shall be effective as of March 15, 2008 and shall remain in full force and effect unless amended by mutual written agreement through the end of the term June 15, 2011 and month to month thereafter provided . . . ."

8

member of the union, Mendez was bound by the terms of the collective bargaining agreement. (See *Florio v. City of Ontario* (2005) 130 Cal.App.4th 1462, 1466 ["'a member of a bargaining unit is bound by the terms of a valid collective bargaining agreement, though he is not formally a party to it and may not even belong to the union which negotiated it'"].)

C.    *Arbitrability of FEHA Claims*

Mid-Wilshire contends that the trial court erred by determining that Mendez's FEHA claims are not arbitrable. We agree with the trial court that the arbitration agreement in the collective bargaining agreement does not apply to Mendez's FEHA claims.

In *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70 [119 S.Ct. 391, 142 L.Ed.2d 361] (*Wright*) the Supreme Court held that the presumption that disputes arising out of collective bargaining agreements are arbitrable does not apply to statutory violations and that a requirement to arbitrate statutory claims in a collective bargaining agreement must be "particularly clear." (*Id.* at p. 79.) The Supreme Court also held that a waiver of an employee's right to have employment discrimination claims heard in a judicial forum must be "clear and unmistakable," and that the court will not infer from a general contractual arbitration provision an intent to waive the statutorily protected right to a judicial forum unless the waiver is "explicitly stated." (*Id.* at p. 80; see also *Metropolitan Edison Co. v. NLRB* (1983) 460 U.S. 693, 708 [103 S.Ct. 1467, 75 L.Ed.2d 387] [waiver by union of a statutorily protected right must be explicit, clear, and unmistakable].) More recently, in *14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. 247 [129 S.Ct. 1456, 173 L.Ed.2d 398] (*14 Penn Plaza*), the Supreme Court stated that "[t]his Court has required only that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement." (*Id.* at p. 258, quoting *Wright*, *supra*, at p. 80; accord, *Harris v. Bingham McCutchen LLP* (2013) 214 Cal.App.4th 1399, 1408; see *Wade v. Ports America Management Corp.* (2013) 218 Cal.App.4th 648, 654, fn. 2.)

9

*Vasquez* followed *Wright*.[4]  The *Vasquez* court stated:  "Although ordinarily a presumption of arbitrability applies to contractual disputes arising out of a collective bargaining agreement, the presumption is not applicable to statutory violations. ([*Wright*], *supra*, 525 U.S. at pp. 78-79 . . . .)  Indeed a requirement to arbitrate statutory claims 'must be particularly clear.'  (*Id*. at p. 79 . . . .)  A union-negotiated waiver of employees' statutory rights to a judicial forum for claims of employment discrimination must be "'clear and unmistakable.'"  (*Id*. at p. 80 . . . .)  . . .  '[T]he right to a . . . judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a [collective bargaining agreement].'  (*Ibid*.)"  (*Vasquez, supra*, 80 Cal.App.4th at p. 434.)  The *Vasquez* court further stated:  "'Broad, general language is not sufficient to meet the level of clarity required to effect a waiver in a [collective bargaining agreement].  In the collective bargaining context, the parties "must be particularly clear" about their intent to arbitrate statutory discrimination claims.'  [Citation.]  A waiver in a collective bargaining agreement is sufficiently clear if it is found in an explicit arbitration clause.  'Under this approach, the [collective bargaining agreement] must contain a clear and unmistakable provision under which the employees agree to submit to arbitration all [state and federal statutory] causes of action arising out of their employment.'  [Citation.]  A waiver in a collective bargaining agreement may also be sufficiently clear if broad, nonspecific language in the arbitration clause is coupled with 'an "explicit incorporation of statutory antidiscrimination requirements" elsewhere in the contract.  [Citation.]  If another provision, like a nondiscrimination clause, makes it unmistakably clear that the discrimination statutes at issue are part of the agreement, employees will be bound to arbitrate their [state and federal statutory] claims.'  [Citation.]  A simple agreement not to

_____

**4**      The *Vasquez* court stated:  "We are aware of no California authority on the waiver sufficiency issue.  However, the United States Supreme Court has recently addressed this issue in [*Wright*], *supra*, 525 U.S. at pages 79-81 . . . , and a number of federal courts have applied the holding of *Wright* to various collective bargaining agreement provisions. It is appropriate to apply federal law to this situation."  (*Vasquez, supra*, 80 Cal.App.4th at p. 434.)

10

engage in acts violative of a particular statute will not suffice; the agreement must establish the intent of the parties to incorporate 'in their entirety' the discrimination statutes. [Citation.]" (*Vasquez*, *supra*, at p. 435, fns. omitted; see *Peabody Holding Co., LLC v. United Mine Workers* (4th Cir. 2012) 665 F.3d 96, 102 ["[t]he 'clear and unmistakable' standard is exacting"]; *Eastern Associated Coal Corp. v. Massey* (4th Cir. 2004) 373 F.3d 530, 534 ["[w]hile it is . . . possible to meet the clear and unmistakable waiver standard of [*Wright*], it is not easy"].)

Under *Wright*, *14 Penn Plaza*, and *Vasquez*, the collective bargaining agreement in this case does not contain a clear and unmistakable agreement to arbitrate statutory discrimination claims. The arbitration provision in the collective bargaining agreement between Mid-Wilshire and the union contains very general language regarding grievances. It does not mention FEHA, it does not explicitly incorporate by reference any statutory anti-discrimination laws, and it does not contain an explicit waiver of the right to seek judicial redress for statutory discrimination causes of action. Nothing in the agreement makes noncompliance with FEHA subject to the arbitration provision. (See *Flores v. Axxis Network & Telecommunications, Inc.*, *supra*, 173 Cal.App.4th at p. 806; *Vasquez*, *supra*, 80 Cal.App.4th at pp. 434-435; see also *Marcario v. County of Orange* (2007) 155 Cal.App.4th 397, 404, 405 [several California cases have held that "an employee could not be compelled even to participate in an arbitration proceeding mandated by a collective bargaining agreement, if the claims at issue are based upon state statutes," unless the agreement to arbitrate such claims is "clear and unmistakable"]; *Jonites v. Exelon Corp.* (7th Cir. 2008) 522 F.3d 721, 725 [collective bargaining agreement did not contain an explicit waiver of right to sue under the Fair Labor Standards Act]; *Meyer v. Irwin Industries, Inc.* (C.D.Cal. 2010) 723 F.Supp.2d 1237, 1247 [collective bargaining agreement did not clearly or unmistakably require arbitration of state law claims].) In the absence of any "clear and unmistakable," "particularly clear," or "explicitly stated" reference to arbitrating statutory discrimination claims in the agreement, Mendez is not required to arbitrate her statutory claims.

Mid-Wilshire points to Article 15 of the collective bargaining agreement, entitled "EQUAL OPPORTUNITY," which states that "[i]t is the policy of the Employer and the Union to be in compliance with all City, County, State and Federal regulations relative to discrimination," to Article 21, which states that "[t]he employer agrees to abide by applicable Federal and State laws and regulations and local ordinances" and to Article 25, which states that "[e]mployees are entitled to be treated with respect and dignity at all times." Mid-Wilshire argues that this language in the collective bargaining agreement "expressly addresses statutory discrimination" and "should be interpreted such that the grievance procedure (including binding arbitration) applies to [Mendez's] claims of statutory discrimination."

The court in *Vasquez* did state that even a "broad, nonspecific" arbitration clause could include statutory discrimination claims if it "is coupled with 'an "explicit incorporation of statutory antidiscrimination requirements" elsewhere in the contract.'" (*Vasquez*, *supra*, 80 Cal.App.4th at p. 435.)[5] The collective bargaining agreement here, however, contains no such explicit incorporation. Neither Article 15, Article 21, nor Article 25 explicitly incorporates any of the provisions of FEHA prohibiting disability discrimination, age discrimination, and failure to provide reasonable accommodation. The general reference to complying with and abiding by all state and local discrimination

---

[5]    This part of the *Vasquez* opinion comes not from *Wright*, but from a Fourth Circuit case, *Carson v. Giant Food, Inc.* (4th Cir. 1999) 175 F.3d 325, 331-332, interpreting the Supreme Court's decision in *Wright*. (See *Vasquez*, *supra*, 80 Cal.App.4th at p. 435.) This alternative formulation of the collective bargaining agreement waiver test has been widely followed in the Fourth Circuit but much less so in other jurisdictions. In *Flores*, the only reported California decision after *Vasquez* where the employer argued that statutory claims (in that case for violations of prevailing wage laws) were arbitrable because of a broad arbitration clause coupled with explicit incorporation of statutes, the court found that the statutory claims were not arbitrable. (See *Flores v. Axxis Network & Telecommunications, Inc.*, *supra*, 173 Cal.App.4th at pp. 809-811.) The court in *Flores* also stated that the "*Vasquez* court did not purport to state exclusive considerations for deciding whether a claim was arbitrable under a particular agreement. Nor did the *Vasquez* court purport to address the question of which factors, if any, would clearly demonstrate the opposite—that a particular issue was not arbitrable." (*Id.* at p. 809.)

12

laws is not an explicit incorporation of FEHA.  (See *Brown v. ABF Freight Systems, Inc.* (4th Cir. 1999) 183 F.3d 319, 322 [although provision in collective bargaining agreement providing that the employer will not discriminate "against any individual 'with respect to hiring, compensation, terms or conditions of employment' . . . may parallel, or even parrot, the language of federal antidiscrimination statutes and prohibit some of the same conduct, . . . none of those statutes is thereby explicitly *incorporated* into the agreement"].)  At a minimum, the agreement must specify the statutes for which claims of violation will be subject to arbitration.  (See *Ibarra v. United Parcel Service* (5th Cir. 2012) 695 F.3d 354, 359-360 ["courts have concluded that for a waiver of an employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the [collective bargaining agreement] must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims"]; *Bratten v. SSI Services, Inc.* (6th Cir. 1999) 185 F.3d 625, 631 ["post-*Wright* courts appear to be in agreement that a statute must specifically be mentioned in a [collective bargaining agreement] for it to even approach *Wright*'s 'clear and unmistakable' standard"]; cf. *Safrit v. Cone Mills Corp.* (4th Cir. 2001) 248 F.3d 306, 307, 308 [section in collective bargaining agreement stating that the parties agree "'that they will abide by all the requirements of Title VII of the Civil Rights Act of 1964'" and that "'[u]nresolved grievances arising under this Section are the proper subjects for arbitration'" was a general arbitration clause coupled with an "'unmistakably clear'" provision that discrimination statutes are part of the agreement].)  The collective bargaining agreement here does not identify any specific statute.

Under Mid-Wilshire's theory, a collective bargaining agreement that contained a broad arbitration clause coupled with general language about complying with the law would pass the clear and unmistakable waiver test.  That is not a fair reading of *Wright*, *14 Penn Plaza*, and *Vasquez*.  Here, as in *Vasquez*, "there is a contractual commitment not to discriminate . . . but there is no express provision that the antidiscrimination commitment is subject to the grievance and arbitration provisions," nor is FEHA "even mentioned."  (*Vasquez, supra*, 80 Cal.App.4th at p. 436.)  Mendez's claims are not

13

arbitrable under the broad arbitration clause coupled with explicit incorporation elsewhere theory.

Mid-Wilshire argues that "the holding in *Vasquez* has been overturned by recent United States Supreme Court decisions," such as *Concepcion*. Mid-Wilshire argues that the "Supreme Court's decision in [*Concepcion*] . . . calls into question any state law that thwarts arbitration based on the type of claim being sought," and that "*Vasquez* is a state law which thwarts arbitration with respect to certain types of claim[s], i.e., statutory claims of discrimination." Therefore, Mid-Wilshire asserts, "*Vasquez* has been implicitly overruled by the United States Supreme Court in [*Concepcion*]."[6]

Mid-Wilshire does not suggest, however, that *Wright* and *14 Penn Plaza* have been overruled, and we see no basis for reaching such a conclusion. Post-*Concepcion* federal and California cases continue to cite *Wright*, *14 Penn Plaza*, and even *Vasquez*. (See, e.g., *City of Los Angeles v. Superior Court* (2013) 56 Cal.4th 1086, 1103 [citing but distinguishing *Wright*]; *Wade v. Ports America Management Corp.*, *supra*, 218 Cal.App.4th at p. 654, fn. 2 [citing *14 Penn Plaza* and *Wright*]; *Choate v. Celite Corp.* (2013) 215 Cal.App.4th 1460, 1465 [citing *Vasquez* and *14 Penn Plaza* for the proposition that "a collective bargaining agreement validly waives a union member's right to litigate federal or state claims in a judicial forum only if the waiver is clear and unmistakable"]; *Harris v. Bingham McCutchen LLP*, *supra*, 214 Cal.App.4th at p. 1408 [citing *14 Penn Plaza* and *Wright*]; *Ibarra v. United Parcel Service*, *supra*, 695 F.3d at pp. 356-360 [citing *14 Penn Plaza* and *Wright*].) As the court stated in *Harris*, footnote six of Justice Scalia's opinion in *Concepcion* "suggests the Supreme Court would

---

**6** *Concepcion* involved the issue of "whether the FAA prohibited States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." (*Concepcion*, *supra*, 131 S.Ct. at p. 1744.) The Supreme Court held that "[r]equiring the availability of classwide arbitration interferes with the fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." (*Id.* at pp. 1748, 1753.)

14

approve of the requirement . . . that contractual waivers of statutory antidiscrimination litigation rights must be expressly stated to be enforceable." (*Harris*, *supra*, at p. 1408.)[7]

D.    *Arbitrability of Mendez's Remaining Claims*

The trial court denied Mid-Wilshire's motion to compel arbitration of all of Mendez's claims, statutory and common law.  Because the collective bargaining agreement did not clearly and unmistakably refer Mendez's statutory discrimination claims to arbitration, the trial court properly denied Mid-Wilshire's motion to compel arbitration of those claims.  With respect to Mendez's common law claims, Mid-Wilshire has not presented any legal argument that the trial court's denial of Mid-Wilshire's motion to compel arbitration of those claims was erroneous.  We therefore deem any claim of error forfeited.  (See *In re Sade C.* (1996) 13 Cal.4th 952, 994; *Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1109; *Gunn v. Mariners Church, Inc.* (2008) 167 Cal.App.4th 206, 218.)

---

[7]    Justice Scalia wrote:  "Of course States remain free to take steps addressing the concerns that attend contracts of adhesion—for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted.  Such steps cannot, however, conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms." (*Concepcion*, *supra*, 131 S.Ct. at p. 1750, fn. 6.)

## DISPOSITION

The order is affirmed.  Mendez is to recover her costs on appeal.

SEGAL, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*]     Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARIBEL MENDEZ, | B243144 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC449964) |
| v. | |
| MID-WILSHIRE HEALTH CARE CENTER, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

       The opinion in the above-entitled matter filed on September 23, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


_____     _____     _____

PERLUSS, P. J.         ZELON, J.         SEGAL, J.*

---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.