Filed 12/16/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| FRANCISCO QUILALA, Plaintiff and Respondent, v. SECURITAS SECURITY SERVICES USA, INC. et al., Defendants and Appellants. | A172017 (San Francisco City & County Super. Ct. No. CGC-24-612606) |

Francisco Quilala filed a complaint against Securitas Security Services USA, Inc. (Securitas), Reynaldo De La Cruz, and Luis Castro (jointly, defendants) alleging sexual harassment and other causes of action related to his former employment with Securitas. Defendants' motion to compel arbitration was unsuccessful as the trial court determined the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (9 U.S.C. §§ 401–402; EFAA) barred enforcement of the parties' predispute arbitration agreement.

We affirm the trial court order denying the motion to compel arbitration. As it must, the trial court exercised its independent duty to ensure the parties' dispute fell within the scope of the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA). This analysis required the court to evaluate whether the EFAA barred arbitration. We find no error in the court undertaking this analysis without obtaining supplemental briefing. We also find no error in its holding that Quilala stated a valid sexual harassment

1

claim and, thus, the EFAA did not permit the parties' dispute to be compelled to arbitration since Quilala wished to pursue his claims in court. Finally, the EFAA's statutory language did not authorize the court to compel the non-sexual harassment claims to arbitration.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2012, Securitas hired Quilala as a security employee. As part of onboarding, Quilala signed an arbitration agreement providing that any employment-related disputes would be governed by the FAA. The agreement states it "is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law," and therefore "requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial."

In April 2023, Securitas assigned Quilala to work security at Oracle Park. The following month, a Securitas supervisor called Quilala and stated there had been a complaint about him being gay, asked intrusive questions about his sexual activity, commented that Quilala was "so embarrassing," and said Quilala would be removed from his work assignment and have his hours reduced. Over the ensuing months, rumors about Quilala's sexual orientation allegedly spread among coworkers. Quilala was removed from his work assignment and had his hours "substantially reduced," and a field supervisor repeatedly mocked Quilala by referring to him as " 'Mrs. Quilala' " whenever they met in person.

On October 15, 2023, Quilala sent a written message to the field supervisor demanding that the supervisor stop saying "Mrs. Quilala" and warning that he would pursue legal action if the conduct continued. The next day, Quilala attended a meeting with various Securitas employees, including a district manager, two supervisors, and a human resources representative.

During that meeting, Quilala was informed they did not appreciate his written complaint and "badger[ed]" and "yell[ed]" at Quilala. Securitas terminated Quilala's employment shortly thereafter.

Quilala subsequently filed a complaint against Securitas and two of its employees, alleging 22 causes of action including "sex, gender," and "sexual orientation harassment" under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA).

Defendants moved to compel arbitration pursuant to the arbitration agreement. Defendants argued the parties had entered into a valid arbitration agreement as a condition of employment, all the claims fell within the scope of the agreement, and both the FAA and California law required its enforcement. In opposition, Quilala took the position that the court must first determine the agreement's validity and enforceability. He argued the agreement was void on several bases but did not specifically raise the EFAA.

The trial court issued a tentative order declining to compel arbitration on a ground not specifically raised by either party: the EFAA barred enforcement of the arbitration agreement because Quilala had alleged a valid sexual harassment cause of action. At the subsequent hearing, defendants argued Quilala could not rely on the EFAA because he had not raised it in opposition to their motion. They also argued the complaint failed to allege a valid sexual harassment claim, making the EFAA inapplicable. Finally, defendants took the position that even if the EFAA applied, the non-harassment claims should still proceed to arbitration.

The court rejected defendants' arguments and adopted its tentative ruling. After noting the applicability of the FAA, the court explained the EFAA rendered the arbitration agreement unenforceable because Quilala pled a cognizable claim for sexual harassment. The court noted Quilala

3

alleged "several specific instances of objectionable conduct that occurred after the effective date of the EFAA," and "[b]ased on this claim, the *case* is exempt from arbitration."  Defendants timely appealed.

**DISCUSSION**

## I.  Standard of Review

In deciding a motion to compel arbitration, "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination."  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)  Insofar as the denial of a petition to arbitrate rests on a pure question of law, we review the order de novo.  (*Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541.)  We review the trial court's factual findings for substantial evidence if the order rests on the court's resolution of evidentiary disputes.  (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 493.)

## II.  The FAA and the EFAA

The FAA establishes that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in [the EFAA]."  (9 U.S.C. § 2.)  For decades, courts have interpreted this mandate expansively, emphasizing that arbitration is a favored means of dispute resolution.  As the United States Supreme Court has explained, " ' "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." ' "  (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 945, quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985) 473 U.S. 614, 626.)

However, Congress created a narrow but significant exception to that general rule. In 2022, Congress enacted the EFAA, amending the FAA to render predispute arbitration agreements unenforceable in cases involving sexual assault or sexual harassment: "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." (9 U.S.C. § 402(a).) The EFAA defines a " 'sexual harassment dispute' " as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." (*Id*., § 401(4).)

The legislative history underscores Congress's intent to restore access to the courts for victims of sexual harassment and assault. The House Judiciary Committee explained that, over time, "forced arbitration clauses have become virtually ubiquitous," often buried in employment contracts, and that such clauses have deprived "millions of Americans of their day in court." (H.R. Rep. No. 117-234, 2d Sess., p. 4 (2022).) The Committee emphasized that arbitration's private nature shields disputes from public scrutiny, and "there is no guarantee that the relevant law will be applied to these disputes or that fundamental notions of fairness and equity will be upheld in the process." (*Ibid.*) Specifically, the Committee expressed concern that forced arbitration in such cases "protect[s] the company by keeping the records of an arbitration secret," which then enables employers to "retaliate against a victim—rather than confront the harasser or the attacker—without fear of their actions becoming public through the courts"; "allows for the growth of office cultures that ignore harassment"; and "create[s] incentives for the

5

corporate protection of rapists and other serial harassers." (*Ibid.*) Through the EFAA, Congress sought to correct this imbalance by ensuring that survivors of sexual harassment and assault can pursue their claims in court rather than in a system that "often favors the company over the individual." (*Ibid.*)

In sum, while the FAA continues to reflect a strong federal policy favoring arbitration, the EFAA creates a targeted exception to that policy where allegations of sexual harassment or sexual assault are at issue, reflecting Congress's determination that such claims warrant resolution through the public court system rather than through private arbitration.

## III. The Trial Court Had an Obligation To Determine the Applicability of the FAA and EFAA

When a party seeks to compel arbitration pursuant to the FAA, the trial court has an obligation to ensure the dispute falls within the scope of the FAA. Such an analysis of course requires the court to evaluate whether arbitration is barred under chapter 4—i.e., the EFAA. (9 U.S.C. § 2 ["... an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4."].)

The EFAA expressly provides that its applicability "shall be determined by a court, rather than an arbitrator." (9 U.S.C. § 402(b); *Johnson v. Everyrealm, Inc.* (S.D.N.Y. 2023) 657 F.Supp.3d 535, 550 (*Johnson*).) This directive accords with the court's established duty to decide gateway questions of arbitrability under the FAA before compelling arbitration— specifically, whether an agreement to arbitrate falls within the FAA's scope.

6

In *New Prime Inc. v. Oliveira* (2019) 586 U.S. 105 (*New Prime*), the United States Supreme Court held that before a court may stay litigation and compel arbitration under sections 3 or 4 of the FAA, "a court must first know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2." (*New Prime*, at p. 111; see also *Singh v. Uber Technologies Inc.* (3d Cir. 2019) 939 F.3d 210, 215 [the gateway question of arbitrability is typically resolved in court].) *New Prime* rejected the notion that a party must specifically challenge a delegation clause to consider such a threshold issue. (*New Prime*, at p. 112.) Rather, it reasoned that sections 3 and 4 may be used to enforce a delegation clause only if the court first " 'determine[s] that the contract in question is within the coverage of the Arbitration Act.' " (*Ibid.*)

Applying *New Prime*, a court must ensure that a dispute lies within section 2 of the FAA before compelling arbitration. Otherwise, courts cannot determine whether an agreement to arbitrate is "valid, irrevocable, and enforceable"; such enforceability is contingent on the agreement not being subject to revocation under existing law or in equity "or as otherwise provided in chapter 4 [i.e., the EFAA]." (9 U.S.C. § 2.) Because the EFAA creates an express statutory exception to section 2's enforcement mandate, courts necessarily must consider its applicability. (See *Olivieri v. Stifel, Nicolaus & Company, Incorporated* (2d Cir. 2024) 112 F.4th 74, 84 ["The EFAA is codified directly into the FAA and limits the scope of [the FAA's] broad mandate to enforce arbitration agreements."]; see also, e.g., *Grajales-El v. Amazon Prime* (3d Cir. Aug. 29, 2024, No. 23-2984) 2024 WL 3983335, at *1 ["before the District Court invoked its power under the FAA to compel arbitration, it was required to first determine whether that power is limited by § 1's 'contracts of employment' exclusion."].) And, as indicated in *New*

7

*Prime*, courts must address such threshold issues whether or not they have been specifically raised by a party.

Therefore, the trial court acted according to its obligation when raising the EFAA as a bar to arbitration in its tentative opinion. And it was not required to request supplemental briefing before making a final determination on the issue as a court may decide an issue on grounds not specifically briefed by the parties, provided the parties are given notice and a fair opportunity to be heard before a ruling is issued. (See, e.g., *Bacon v. Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 860; *Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335–336.)

Defendants' assertion that they did not receive an adequate opportunity to address the EFAA argument because the trial court was required to request supplemental briefing is unsupported. They rely principally on *Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th 1282, 1285, which concerned a discovery dispute. There, the trial court granted a motion to compel on a procedural basis not raised by either party. (*Ibid.*) On appeal, the court acknowledged that while a trial court may rule on unbriefed grounds, "fundamental principles of due process" required notice sufficient to prevent an order from issuing "like a 'bolt from the blue out of the trial judge's chambers.' " (*Id.* at p. 1286.) The *Monarch* court advised, as a matter of sound practice, that trial courts should give advance notice of unbriefed issues and allow the parties to address them at oral argument or through supplemental briefing. (*Ibid.*)

The record here demonstrates that the trial court did exactly that. The court issued a tentative ruling in advance of the hearing, expressly stating its conclusion that the EFAA applied and barred arbitration. At the hearing, the court invited the parties to address the issue. Defendants did so, devoting

8

their argument entirely to whether the EFAA had been waived and whether it should apply. Although *Monarch* suggested courts may permit supplemental briefing when new issues arise, defendants never requested leave to file such briefing or indicated that further response was necessary. The court's process satisfied due process and comported with the approach endorsed in *Monarch* because defendants received both notice and an opportunity to be heard on the EFAA's applicability.

In sum, the trial court appropriately considered whether the EFAA barred arbitration in this action and the lack of supplemental briefing regarding the EFAA's applicability is not a sound basis for reversal.

## IV. The EFAA Applied as Quilala Alleged a Valid Sexual Harassment Claim

FEHA makes it an unlawful employment practice for an employer to harass an employee because of the sex of that person. (Gov. Code, § 12940, subd. (j)(1).) Harassment because of sex includes sexual harassment and gender harassment. (*Id.*, subd. (j)(4)(C).) To prevail on a harassment claim, an employee must show the harassment was " 'severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex.' " (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 279, italics omitted.)

Whether conduct is sufficiently severe or pervasive is determined by the totality of the circumstances. (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 628 (*Bailey*); Gov. Code, § 12923, subd. (c).) " ' "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" ' are not sufficient to create an actionable claim of harassment." (*Bailey*, at p. 628.) But an isolated incident can form the basis

9

for an actionable claim if it is extremely serious. (*Id.* at pp. 629, 634 [single use of an "unambiguous racial epithet" may suffice].) Section 12923, subdivision (a), further clarifies that a hostile work environment exists when harassing conduct "sufficiently offends, humiliates, distresses, or intrudes upon its victim," such that it disrupts emotional tranquility or interferes with the victim's sense of well-being or ability to perform his or her job.

Measured against these standards, Quilala's allegations are clearly sufficient to state a claim for sexual harassment. He asserts supervisors and coworkers questioned his sexual identity, a manager asked if he "suck[ed]" certain individuals, and that same manager mocked him by saying Quilala's perceived sexual orientation was "so embarrassing." Quilala further alleged he was removed from a work assignment and had his hours reduced because of that perceived sexual orientation. A field supervisor's repeated references to him as "Mrs. Quilala" were sufficiently disruptive that Quilala formally objected in writing and threatened legal action if the comments continued. Viewed collectively, these allegations go well beyond "simple teasing" or "offhand comments." They describe repeated and humiliating conduct that altered the conditions of employment.

Defendants' reliance on cases decided prior to the adoption of Government Code section 12923 or *Bailey*, *supra*, 16 Cal.5th 611 is misplaced. Those prior authorities "fail[ ] to take into account several key principles, including the definition of a hostile work environment [and] the clarification that '[a] single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment if the harassing conduct . . . created an intimidating, hostile, or offensive working environment . . . .' " (*Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal.App.5th 865, 880.) Applying current standards, the trial court

correctly determined that Quilala's allegations stated a plausible claim of sexual harassment under FEHA, bringing the dispute within the scope of the EFAA.

## V. Because the EFAA Applied, Quilala Had the Right To Proceed in Court Without an Express Invocation of the EFAA

Once the court had determined the EFAA applied because Quilala raised a valid sexual harassment claim, it then had to determine whether Quilala "elected" to pursue his claim in court. As we now explain, we find the EFAA does not require an express invocation, and a plaintiff may elect to exercise the right to proceed in court by conduct that clearly indicates he or she wishes to do so. Holding otherwise would run counter to Congress's intent in enacting the EFAA.

The EFAA carves out a targeted exception to the FAA's general enforceability mandate "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute." (9 U.S.C. § 402(a).) However, the EFAA does not define "election." An election is commonly understood to mean a choice (see Black's Law Dict. (12th ed. 2024) p. 653 ["The exercise of a choice; esp., the act of choosing from several possible rights or remedies in a way that precludes the use of other rights or remedies"]), and "the EFAA's legislative history indicates the law was intended to grant victims the choice between the arbitral forum and the courts when seeking to redress sexual harassment in the workplace." (*Ding v. Structure Therapeutics, Inc.* (N.D.Cal. 2024) 755 F.Supp.3d 1200, 1215.) Congress adopted the EFAA precisely to ensure victims of sexual harassment and assault, not employers, control the choice of forum: "H.R. 4445 would restore access to justice for millions of victims of sexual assault or harassment who are currently locked out of the court system and are forced

11

to settle their disputes against companies in a private system of arbitration that often favors the company over the individual." (H.R. Rep. No. 117-234, 2d Sess., p. 4 (2022).)

Construing "election" to impose an express invocation requirement would undermine that purpose and be in violation of our duty to interpret a statute " ' "to determine the Legislature's intent so as to effectuate the law's purpose." ' " (*Chavez v. California Collision, LLC* (2024) 107 Cal.App.5th 298, 306 [we begin with the plain and commonsense meaning of statutory text and may consider the statute's purpose and legislative history if the statutory text permits more than one reasonable interpretation].) The statute contains no requirement that a plaintiff explicitly reference or cite the EFAA to benefit from its protection. Congress instead used a flexible term—"elect"—that is broad enough to encompass conduct that demonstrates a plaintiff's choice to proceed in court. Requiring plaintiffs to meet additional procedural formalities to invoke that choice would impose a barrier Congress never created.

In support of their position that Quilala was required to expressly invoke the EFAA for it to apply, defendants rely on *Spriggs v. Gardenview OPCO, LLC* (N.J. Super. Ct. App. Div. 2024, No. A-1133-23) 2024 WL 5001752, an unpublished decision from the New Jersey Superior Court's appellate division. There, the court concluded the enforceability of the EFAA was not properly before it because the issue had not been raised below. (*Spriggs*, at p. *3.) It then briefly observed—without analysis—that the phrase "at the election" in the EFAA required plaintiffs to "invoke their right to 'elect[ ]' to void the agreement." (*Spriggs*, at p. *3.)

We do not find *Spriggs* persuasive. Generally, "absent some affirmative indication of Congress' intent to preclude waiver," statutory

12

provisions are presumptively waivable. (See *United States v. Mezzanatto* (1995) 513 U.S. 196, 201.) But applying a waiver principle here would depend on an unduly narrow reading of "election" that is inconsistent with Congress's intent in enacting the EFAA as discussed above.

Quilala opted to proceed in court by filing a complaint in the superior court and opposing defendants' motion to compel arbitration. That conduct was sufficient to constitute an "election" under the statute. Nothing in the text, legislative history, or purpose of the EFAA demands more, and no conduct by Quilala evinces an intent to proceed via arbitration.

## VI. The Non-harassment Claims Could Not Be Carved Out as the EFAA Applies to the Case as a Whole

Finally, defendants contend the trial court erred by refusing to compel arbitration of Quilala's remaining non-sexual harassment claims. They are mistaken.

The EFAA provides that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." (9 U.S.C. § 402(a).) The statute's plain language makes clear that the exemption applies to the *case*, not individual claims, where a plaintiff alleges conduct constituting sexual harassment or sexual assault. And so, it is no surprise that every published California decision to address this issue has concluded that, once properly invoked, the EFAA renders an arbitration agreement unenforceable as to the *entire case*, not merely the sexual harassment claim. (*Casey v. Superior Court* (2025) 108 Cal.App.5th 575, 588 (*Casey*), review denied May 14, 2025; *Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 796 (*Liu*), review denied Dec. 31,

2024; *Doe v. Second Street Corp.* (2024) 105 Cal.App.5th 552, 577 (*Second Street*).)

In *Second Street*, the court held the EFAA "applies to the entire *case*, not merely to the sexual assault or sexual harassment claims alleged as a part of the case," emphasizing Congress deliberately used the term "case," not "claim." (*Second Street*, *supra*, 105 Cal.App.5th at p. 577.) Both *Liu* and *Casey* adopted and reaffirmed *Second Street*'s interpretation. *Liu* explained that the statutory use of the term "case" forecloses an interpretation limiting the EFAA's reach to discrete causes of action. (*Liu*, *supra*, 105 Cal.App.5th at p. 803.) Similarly, *Casey* held that where even one cause of action arises from sexual harassment, " 'the arbitration agreement is unenforceable as to all claims asserted in the lawsuit.' " (*Casey*, *supra*, 108 Cal.App.5th at p. 588.)

We find these decisions persuasive and adopt their reasoning. And we note that federal authorities further support our conclusion. In *Johnson*, *supra*, 657 F.Supp.3d 535, the court found the EFAA's text "clear, unambiguous, and decisive," explaining that "case" refers to a legal action "as an undivided whole," as compared to the narrower term "claim." (*Johnson*, at pp. 558–559.) Congress's use of "case" in section 402(a) of the EFAA and "claim" in the statute's effective-date provision confirmed its intent to give each term distinct meaning—i.e., barring arbitration of the lawsuit in its entirety when it relates to a sexual harassment dispute. (*Johnson*, at pp. 559–560.) Likewise, in *Diaz-Roa v. Hermes Law, P.C.* (S.D.N.Y. 2024) 757 F.Supp.3d 498 (*Diaz-Roa*), the court concluded that when the EFAA applies, "the pre-arbitration agreement is invalid and unenforceable with respect to the entire case," noting that "Congress knows how to use the narrower term 'claim' when it so intends." (*Diaz-Roa*, at p. 532.) That interpretation furthers Congress's stated purpose: " 'to empower claims by

14

sexual harassment and/or assault victims that had been inhibited by proliferating arbitration clauses in employment agreements.' " (*Ibid.*; see also *Bray v. Rhythm Management Group, LLC* (D.Md. Sept. 24, 2024, Civ. A. No. TDC-23-3142) 2024 WL 4278989, at *8 [numerous federal district courts have likewise held that the EFAA applies to an entire case].)

Defendants' reliance on *Mera v. SA Hospitality Group, LLC* (S.D.N.Y. 2023) 675 F.Supp.3d 442 (*Mera*) is misplaced. In *Mera*, the court held that "under the EFAA, an arbitration agreement executed by an individual alleging conduct constituting a sexual harassment dispute is unenforceable only to the extent that the case filed by such individual 'relates to' the sexual harassment dispute." (*Id.* at p. 447.) This holding has been repeatedly criticized.

*Diaz-Roa* observed that *Mera*'s interpretation of the EFAA "would require courts to carve up every case to which the EFAA applies by reaching judgment—with respect to each claim—on whether the claim relates to the sexual harassment or sexual assault dispute." (*Diaz-Roa*, *supra*, 757 F.Supp.3d at p. 532, fn. 9.) Such an approach is not only "antithetical to the language of the EFAA and its protective intent, [citation], but it would also have the court address early in a case and in a definitive manner 'a question that often is not easily answered on the pleadings.' " (*Ibid.*) *Liu* similarly cautioned *Mera*'s approach was "unpersuasive based on the plain language of section 402(a)," in that "the *Mera* court in effect added 'to the extent' to the statutory language, which contravenes the rules of statutory construction." (*Liu*, *supra*, 105 Cal.App.5th at pp. 805–806.) Moreover, we note the plaintiff in *Mera* pursued wage and hour claims on behalf of all nonexempt employees—materially different from this case, where all of Quilala's causes

15

of action arise from his own employment and treatment by defendants. (See *Mera*, *supra*, 675 F.Supp.3d at p. 448.)

As all of Quilala's claims stem from the same employment relationship and his treatment by defendants, his case "relates to" his sexual harassment allegations within the meaning of section 402(a) of the EFAA. Consistent with *Second Street*, *Liu*, and *Casey*, the EFAA renders the arbitration agreement unenforceable as to the entirety of Quilala's case.

## DISPOSITION

The order is affirmed. Quilala may recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

PETROU, J.

WE CONCUR:

TUCHER, P. J.

RODRÍGUEZ, J.

*Quilala v. Securitas Security Services USA, Inc.* / A172017

Trial Court:  City and County of San Francisco Superior Court

Trial Judge: Hon. Richard B. Ulmer

Counsel:

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Daniel R. Velladao; Goldberg Segalla, Stephen C. Mazzara and Ani Garibyan for Defendants and Appellants.

Allan Villanueva Law, Allan A. Villanueva and Parham Golestanian for Plaintiff and Respondent.