Filed 8/2/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CALVIN WADE, | B238224 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC444418) |
| v. | |
| PORTS AMERICA MANAGEMENT CORP., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David L. Minning, Judge. Affirmed.

Mancini & Associates, Marcus A. Mancini, Timothy J. Gonzales, Michael R. Fostakowsky; Benedon & Serlin, Gerald M. Serlin, and Kelly R. Horwitz for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Michele L. Maryott, and Joseph A. Gorman for Defendants and Respondents.

_____

## INTRODUCTION

*Camargo v. California Portland Cement Co*. (2001) 86 Cal.App.4th 995 (*Camargo*), held that a labor arbitration pursuant to a collective bargaining agreement (CBA) has no preclusive effect on a claim pursuant to the Fair Employment and Housing Act (FEHA), Government Code section 12940 et seq., unless the parties expressly agreed to arbitrate FEHA claims. (*Camargo*, at p. 1008.) On appeal, Calvin Wade contends this holding should be extended to common law claims related to the FEHA, such as a claim for wrongful termination in violation of public policy. We disagree, as there is no comprehensive statutory scheme applicable to FEHA-related common law claims comparable to the FEHA. In the alternative, appellant contends the arbitration had no preclusive effect, as it did not address his racial discrimination claim. We conclude the arbitration encompassed that claim. Accordingly, we affirm the grant of a summary judgment in favor of respondents Marine Terminals Corporation and Ports America Management Corporation (collectively MTC) on appellant's cause of action for wrongful termination in violation of public policy.

## FACTUAL AND PROCEDURAL HISTORY

Appellant, an African-American male, was employed as a steady vessel planner by MTC.[1] Appellant was a member of Local 63 of the International Longshore and Warehouse Union (ILWU or the Union). The ILWU is certified as the exclusive bargaining representative for longshore employees employed by MTC.

---

[1] A vessel planner is a specialized marine clerk who plans the loading and unloading of ships. A "steady" vessel planner is a full-time employee who works exclusively for a particular terminal and in a particular position.

As a member of Local 63, appellant was subject to a CBA, the pacific coast longshore and clerks' agreement contract document for clerks and related classifications (PCCCD). Section 13.1 of the PCCCD prohibited discrimination against union members. It provided in pertinent part: "There shall be no discrimination . . . either in favor of or against any person because of membership or nonmembership in the Union, activity for or against the Union or absence thereof, race, creed, color, sex (including gender, pregnancy, sexual orientation), age (forty or over), national origin, religious or political beliefs, disability, protected family care or medical leave status, veteran status, political affiliation or marital status. Also prohibited by this policy is retaliation of any kind for filing or supporting a complaint of discrimination or harassment."

The PCCCD required Union members to submit any grievances related to their employment to binding arbitration. Section 13.2 of the PCCCD provided in pertinent part: "All grievances and complaints alleging incidents of discrimination or harassment . . . in connection with any action subject to the terms of this Agreement based on race, creed, color, sex . . . or alleging retaliation of any kind for filing or supporting a complaint of such discrimination or harassment, shall be processed solely under the Special Grievance/Arbitration Procedures For The Resolution of Complaints Re Discrimination and Harassment Under the Pacific Coast Longshore & Clerk's Agreement . . . ."

On September 5, 2008, appellant was laid off. He was the fourth steady vessel planner released by MTC that year. Jeff Blaschko, the manager who made the decision to release appellant, stated that he selected appellant because of his poor work performance. At the time appellant was released, he had more seniority than three of the six steady vessel planners MTC retained.

3

Following his release, appellant filed a grievance alleging that he had been laid off in violation of the PCCCD. In his written grievance, he stated:

"Section 18 of the PCC[C]D Contract has a Good-Faith Guarantee. The following planners were hired and laid off according to seniority, with the exception of myself: [Names].

"There are three Planners with less seniority than myself that are still employed at MTC. Section 13 of the PCC[C]D Contract has been violated, and as a result, I feel discriminated against.

"On record are Grievances I have filed with the Union against MTC employees for discriminatory practices in the past. The Grievances were upheld, and disciplinary action was taken against MTC employees and management.

"MTC continues to demonstrate unfair discriminatory practices against minority employees."

The grievance was arbitrated in early 2009. At the arbitration hearing, appellant was represented by a Union lawyer. The lawyer framed the grievance as whether appellant was released in violation of the seniority system, and whether appellant was discriminated against in violation of Section 13.1 of the PCCCD for his Union activity. Appellant's written grievance was read into the record, three witnesses (including appellant) were called in support, and numerous documents were introduced into evidence. Appellant's earlier grievances, alleging that two MTC employees had made inappropriate racial remarks and that MTC had failed to discipline them for those remarks, were also introduced into evidence.

On February 17, 2009, the arbitrator issued a written decision. In his decision, the arbitrator stated that the issues presented were: "Whether Calvin Wade, hereafter Wade, was released improperly from the position of steady vessel planner. Also was Wade released in violation of Section 13.1 of the PCCCD?" The arbitrator concluded that "the PCCCD governs this dispute and permits the

4

Employer to properly release Wade in the instant dispute." The arbitrator also found "no compelling evidence to support the claim of the Union that Section 13.1 was violated by the Employer."

On August 25, 2010, appellant filed an action in the superior court, alleging a single cause of action: retaliation and wrongful termination in violation of public policy. Specifically, he alleged he was terminated in violation of the public policy against racial discrimination and retaliation, as codified by the Legislature in the FEHA.

After filing an answer generally denying the allegations, respondents moved for summary judgment. They asserted that appellant's claim was barred by res judicata, as the identical claim had been adversely decided against appellant in the labor arbitration.

Appellant opposed summary judgment. He contended his claim was not barred by res judicata, as the arbitration involved discrimination on the basis of his union activities, not racial discrimination. He further contended the arbitration award did not bar his claim, citing federal and state cases holding that an adverse decision by an arbitrator had no preclusive effect on statutory discrimination claims.

Respondents filed a reply, asserting the arbitration had encompassed appellant's racial discrimination claim. They further asserted that as appellant did not assert a claim under the FEHA or any other statute, he could not rely upon cases addressing the preclusive effect of arbitration on statutory claims.

On December 9, 2011, the superior court granted respondents' motion for summary judgment. The court determined that "[appellant]'s single cause of action for retaliation and wrongful termination in violation of public policy is barred because [he] previously litigated his claim that he was wrongfully

5

terminated from his employment with [respondents] based on race and retaliation . . . [¶] . . . The arbitrator's decision was final and binding and bars [appellant]'s attempt to re-litigate the issue of racial discrimination and retaliation presented in [his] complaint as a common law cause of action."

Judgment in favor of respondents was entered December 14, 2011. Appellant timely appealed.

## DISCUSSION

Appellant contends the trial court erred in determining that his claim was barred by res judicata. He argues a labor arbitration has no preclusive effect on common law causes of action related to the FEHA. Alternatively, he argues the arbitration did not address his claim that he was wrongfully terminated because of his race.

A.     Res Judicata and Labor Arbitrations

"'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, 896 (*Mycogen Corp*.).) "The doctrine of res judicata applies not only to judicial proceedings but also to arbitration proceedings. [Citation]" (*Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 755; see also *Sartor v. Superior Court* (1982) 136 Cal.App.3d 322, 328 [confirmed private arbitration award in favor of architectural firm bars homeowner's identical causes of action against firm's employees].) Thus, in *Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, the court held that a labor arbitration award had a preclusive effect on common law causes of action for fraud and negligent misrepresentation. (*Id*. at pp. 1332, 1336; see also *Conner v. Dart Transportation Service* (1976) 65 Cal.App.3d 320, 322-323 [doctrine of collateral

6

estoppel applied to bar former employee's cause of action for wrongful discharge where labor arbitration established that employee was fired for dishonesty].)

In *Alexander v. Gardner-Denver Co*. (1974) 415 U.S. 36 (*Gardner-Denver*), however, the United States Supreme Court held that a labor arbitration award had no preclusive effect on an employment discrimination claim under title VII of the federal Civil Rights Act of 1964, Title 42 United States Code section 2000e et seq. (Title VII), the federal analogue to the FEHA. (*Gardner-Denver*, *supra*, 415 U.S. at pp. 49-50.) There, the plaintiff, an African-American employee of the defendant company and a union member, filed a grievance alleging wrongful discharge under the relevant CBA. The CBA prohibited discrimination against employees "'on account of race, color, religion, sex, national origin, or ancestry,'" and provided for compulsory arbitration of grievances. (*Id*. at p. 39.) Although the plaintiff's grievance did not mention racial discrimination, he testified at the arbitration hearing that he was discharged because of his race. The arbitrator ruled that the plaintiff had been discharged for just cause; the arbitration award did not mention the racial discrimination claim. (*Id*. at pp. 39, 42.)

Prior to the arbitration, the plaintiff had filed a racial discrimination charge with the Equal Employment Opportunity Commission (EEOC). (*Gardner-Denver*, *supra*, 415 U.S. at p. 39.) After the EEOC rejected the plaintiff's claim and notified him of his right to sue, the plaintiff brought suit in federal district court alleging a claim under Title VII for racial discrimination. (*Id*. at p. 43.) The district court dismissed the suit, and the Court of Appeals affirmed. (*Ibid*.) The United States Supreme Court reversed, holding that the labor arbitration had no preclusive effect on the plaintiff's Title VII claim.

In reaching its decision, the court explained that Title VII vests "federal courts with plenary powers to enforce the statutory requirements; and it specifies

7

with precision the jurisdictional prerequisites that an individual must satisfy before he is entitled to institute a lawsuit." (*Gardner-Denver*, *supra*, 415 U.S. at p. 47.) "In addition, legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination." (*Ibid*.) "Title VII provides for consideration of employment-discrimination claims in several forums. [Citations.] And, in general, submission of a claim to one forum does not preclude a later submission to another. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. . . . In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." (*Id*. at pp. 47-49, fn. omitted.)[2]

In *Camargo*, the court applied the holding in *Gardner-Denver* to FEHA claims. (*Camargo*, *supra*, 86 Cal.App.4th at p. 1008.) There, the plaintiff, a female employee and a union member, submitted grievances based on sex discrimination and sexual harassment to arbitration, as required by the relevant CBA. (*Id*. at p. 999.) Before the arbitration began, she also filed an administrative

---

[2] The United States Supreme Court later limited the holding in *Gardner-Denver* to those situations where the CBA does not clearly and unmistakably show an intention to arbitrate statutory anti-discrimination claims. (See *14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. 247, 251 [provision in a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate claims arising under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 et seq., is enforceable]; see also *Wright v. Universal Mar. Serv. Corp.* (1998) 525 U.S. 70, 80 [union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination must be clear and unmistakable]; *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 23 [employee may agree to arbitrate ADEA claim].)

8

claim for sexual discrimination and harassment with the California Department of Fair Employment and Housing (DFEH). (*Id*. at p. 1000.) After the arbitrator ruled against her, she filed a complaint in superior court seeking damages for sexual discrimination and harassment under the FEHA. (*Id*. at p. 999.) In her complaint, she alleged that she had filed a sexual discrimination claim with DFEH and had received a right-to-sue letter. (*Id*. at p. 1004.) The superior court dismissed the complaint, but the appellate court reversed. (*Id*. at p. 999.) The court held that an arbitration award of a FEHA claim under a CBA can be given preclusive effect only if (1) the agreement to arbitrate the FEHA claim in the CBA is clear and unmistakable, and (2) the procedures of the arbitration allow for the full litigation and fair adjudication of the FEHA claim. Because the record showed neither condition had been satisfied, the arbitration award had no preclusive effect. (*Id*. at pp. 1018-1019.)

*Gardner-Denver* and *Camargo* addressed only the preclusive effect of a labor arbitration award on statutory employment discrimination claims. No federal or California court has extended those holdings -- expressly based on statutory schemes -- to hold that a labor arbitration award may not preclude nonstatutory employment discrimination claims. Appellant argues that failing to extend *Camargo* to nonstatutory employment discrimination claims "would create an indefensible distinction that places the form of a claim above the substance." We disagree. The exceptions carved out in *Gardner-Denver* and *Camargo* were based on the courts' interpretation of the statutory schemes set forth in Title VII and the FEHA. There are legally significant distinctions between FEHA claims and common law discrimination claims. For example, like Title VII, the FEHA has specific "jurisdictional prerequisites that an individual must satisfy before he is entitled to institute a lawsuit." (*Gardner-Denver*, *supra*, 415 U.S. at p. 47.)

9

"Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [DFEH] and must obtain from the [DFEH] a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA." (*Romano v. Rockwell Internat., Inc*. (1996) 14 Cal.4th 479, 492.) In contrast, a plaintiff alleging a claim for wrongful termination in violation of public policy need not exhaust those administrative remedies. (*Palmer v. Regents of University of California* (2003) 107 Cal.App.4th 899, 904.)[3] Additionally, the FEHA has a one-year limitations period (Gov. Code, § 12965, subd. (b)), not applicable to common law claims for wrongful termination in violation of public policy against racial discrimination. (*Carmichael v. Alfano Temporary Personnel* (1991) 233 Cal.App.3d 1126, 1132 [claim that plaintiff was wrongfully terminated in violation of public policy, in retaliation for filing racial discrimination charges with EEOC, is "independent" of the FEHA, and thus not subject to its limitations period].) Applying the holdings of *Gardner-Denver* and *Camargo* to the instant case would allow a plaintiff to benefit from the FEHA statutory scheme without complying with any of its prerequisites, including those essential to jurisdiction. To extend *Camargo* to nonstatutory employment discrimination claims would thus upset the comprehensive scheme established by the Legislature in the FEHA. We decline to do so.

Appellant's reliance on *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064 (*Little*) is misplaced. There, in the context of an employer's motion to compel arbitration, the California Supreme Court held that an employee's claim for wrongful termination in violation of public policy may be subject to mandatory arbitration only if the arbitration provides the minimum procedural requirements

---

[3] No evidence suggests appellant filed an administrative charge or complaint with the DFEH.

set forth in *Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83 (*Armendariz*). (*Little*, *supra*, 29 Cal.4th at p. 1077.) The case did not address arbitration of racial discrimination claims pursuant to an agreed-upon and bargained-for agreement between an employer and a labor union. Nor did it address the preclusive effect of such arbitrations on a subsequently filed action asserting wrongful termination in violation of public policy. (Cf. *Camargo*, *supra*, 86 Cal.4th at p. 1019, fn. 8 [noting that its holding is "not altered by the recent opinion of our Supreme Court in *Armendariz*," as that decision did not "discuss the question of collateral estoppel effect to be given to the arbitrator's findings" and "[t]he agreement to arbitrate in *Armendariz* was not a collective bargaining agreement"].) Accordingly, we conclude that a labor arbitration award, pursuant to a CBA, may bar the employee from bringing a common law claim alleging retaliation and wrongful termination in violation of public policy, if the arbitration award addressed the same cause of action. (*Mycogen Corp.*, *supra*, 28 Cal.4th at p. 896 [res judicata prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them].) We now address whether the cause of action was the same in both the arbitration and superior court proceedings.

B.     Identity of Cause of Action

"California's res judicata doctrine is based upon the primary right theory." (*Mycogen Corp.*, *supra*, 28 Cal.4th at p. 904.) "The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.) "As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the *legal theory* on which liability for that

11

injury is premised: 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.'" (*Id.* at pp. 681-682.)

Additionally, under the doctrine of res judicata, "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. """"Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."' [Citation.]" (*Mycogen Corp.*, *supra*, 28 Cal.4th at p. 897; see also *Sutphin v. Speik* (1940) 15 Cal.2d 195, 202 (*Sutphin*) ["[P]rior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable"].) "[C]ase law also indicates that arbitrating parties are obliged, in the manner of *Sutphin*, to place before their arbitrator all matters within the scope of the arbitration, related to the subject matter, and relevant to the issues [citations]." (*Thibodeau v. Crum*, *supra*, 4 Cal.App.4th at p. 755.)

Here, appellant submitted a grievance to arbitration, asserting that he was wrongfully terminated (1) despite his seniority over three remaining employees, (2) as a result of his prior filing of grievances alleging racially discriminatory practices by MTC employees and management, and (3) due to MTC's "continue[d] [and] demonstrate[d] unfair discriminatory practices against minority employees." At the arbitration hearing, appellant's counsel argued that appellant had been improperly terminated in violation of the seniority system, and in violation of Section 13.1 of the PCCCD, which prohibits discrimination and retaliation for Union activities, as well as on the basis of race. On this record, appellant asserted a single primary right: his right not to be discharged for wrongful reasons. His grievance presented three different legal theories why his release was wrongful:

12

violation of the seniority system, retaliation for filing prior grievances alleging racially discriminatory practices, and discrimination against minority employees. But the sole injury for which he sought relief was his termination. That same allegedly wrongful termination was the basis for his subsequently filed action in superior court. Thus, the same primary right was at issue both in the labor arbitration proceeding and in the superior court action. Accordingly, res judicata applied to bar appellant's single cause of action for wrongful termination in violation of public policy.

Moreover, the arbitration encompassed appellant's common law racial discrimination claim. Appellant alleged in his grievance that his termination was a result of "unfair discriminatory practices against minority employees" -- an express claim that he was allegedly terminated because of his race. At the arbitration hearing, his counsel read the entire grievance into the record, and introduced the earlier grievances alleging racially discriminatory practices into evidence. Appellant presented no direct evidence that he was released because of racial discrimination, and the arbitrator found no evidence to support the claim that Section 13.1 of the PCCCD, which prohibited racial discrimination, had been violated. That finding is binding on appellant, and precludes his subsequent claim that he was wrongfully terminated because of his race.

Even were we to conclude that appellant's allegation of "unfair discriminatory practices against minority employees" is not an express racial discrimination claim, he would still be barred from litigating that claim in superior court, because it is "'within the scope of the action, related to the subject-matter and relevant to the issues.'" (*Thibodeau v. Crum*, *supra*, 4 Cal.App.4th at p. 755.) Section 13.2 of the PCCCD required that all racial discrimination claims be arbitrated; racial discrimination as a reason for appellant's release is related to the

13

subject matter of the arbitration, which was the propriety of his release; and racial discrimination is relevant to the issues, because evidence of racial discrimination would undermine management's stated reason that appellant was released because of his poor work performance. Thus, appellant could and should have raised the issue of "wrongful termination in violation of the public policy against racial discrimination" in the arbitration proceeding. (Cf. *Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 482 [plaintiff collaterally estopped from relitigating racial discrimination claim because even if "the issue of discrimination was not litigated in the administrative or mandate proceedings," he did not show that "he was prevented from introducing admissible evidence relevant to that issue"].) Accordingly, he is barred from filing the subsequent superior court action. (See *Sutphin*, *supra*, 15 Cal.2d at p. 202 ["[P]rior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable."].)[4]

The decisions in *Agarwal v. Johnson* (1979) 25 Cal.3d 932 (*Agarwal*), disapproved on other grounds in *White v. Ultramar, Inc*. (1999) 21 Cal.4th 563, *Acuña v. Regents of University of California* (1997) 56 Cal.App.4th 639 (*Acuña*), and *George v. California Unemployment Ins. Appeals Bd*. (2009) 179 Cal.App.4th 1475 (*George*), on which appellant relies, do not assist him. *Agarwal* and *Acuña* held that Title VII and the FEHA protect an employee's primary right to be free from invidious employment discrimination. (*Agarwal*, *supra*, 25 Cal.3d at p. 955; *Acuña*, *supra*, at pp. 644-646.) They did not address a situation where the plaintiff alleged the same cause of action -- wrongful termination -- in an arbitration proceeding and a superior court action.

---

[4] As respondents note, even were we to find appellant's racial discrimination had not been previously litigated, under Section 13.2 of the PCCCD, his exclusive remedy would be arbitration.

*George* is similarly inapposite.  There, a civil service employee challenged disciplinary actions with the State Personnel Board, but did not argue that the disciplinary actions were retaliatory or discriminatory.  After the board rendered its decision partially affirming some of the disciplinary actions, the employee filed an action in superior court, alleging that the disciplinary actions constituted retaliation and discrimination in violation of the FEHA.  (*George*, *supra*, 179 Cal.App.4th at pp. 1480-1481.)  Emphasizing the "unique circumstances of [the] case," the appellate court concluded that the administrative proceeding did not bar the employee's FEHA claims for retaliation and discrimination.  The court distinguished another case with similar facts on the ground that there, "the prior actions resolved the key issue in the FEHA claim -- whether the discharge was for good cause.  This is not the case here."  (*Id*. at p. 1485.)  In contrast, here, the arbitrator resolved the key issue in the superior court action -- whether appellant's release violated Section 13.1 of the PCCCD (prohibiting, inter alia, employment discrimination on the basis of race).  In addition, the employee in *George* did not assert that the disciplinary actions were retaliatory or discriminatory; here, appellant asserted in his grievance that his termination was retaliatory and discriminatory.  Finally, as noted, appellant has not alleged a FEHA claim.

In sum, appellant is barred under the doctrine of res judicata from bringing his single cause of action for retaliation and wrongful termination in violation of public policy in superior court, because an arbitrator previously resolved that same cause of action adversely against him.  The superior court properly granted summary judgment in favor of respondents.[5]

---

[5]    Appellant contends the labor arbitration had no preclusive effect because respondents have not shown the arbitration provided him a full and fair opportunity to litigate his racial discrimination claim.  The procedural fairness of the arbitration

**DISPOSITION**

The judgment of dismissal is affirmed.  Costs are awarded to respondents.


**CERTIFIED FOR PUBLICATION.**



                                        MANELLA, J.


We concur:



EPSTEIN, P. J.



SUZUKAWA, J.

---

is relevant only if *Camargo* is applicable to appellant's claim.  (See *Camargo*, *supra*, 86 Cal.App.4th at pp. 1018-1019 [arbitration award of a FEHA claim under a CBA can be given preclusive effect if (1) the agreement to arbitrate the FEHA claim in the CBA is clear and unmistakable, and (2) the procedures of the arbitration allowed for the full litigation and fair adjudication of the FEHA claim].)  As we have concluded that *Camargo* is inapplicable, we need not address this issue.