Filed 2/17/15  Massaji v. Rofeh CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SCHAFA MASSAJI,<br><br>        Plaintiff, Cross-defendant  and Appellant,<br><br>        v.<br><br>MARK ROFEH et al.,<br><br>        Defendants, Cross-complainants and Respondents. | B250315<br><br>(Los Angeles County<br>Super. Ct. No. BC405445) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Amy D. Hogue, Judge.  Affirmed as modified.

        Chris Campbell; Geragos Law Group and Matthew J. Geragos, for Plaintiff, Cross-defendant and Appellant, Schafa Massaji.

        Affeld Grivakes Zucker, David W. Affeld and Cheryl Priest Ainsworth, for Defendants, Cross-complainants and Respondents, Mark Rofeh and Serengeti Tea Company, and Defendants Serengeti Tea LLC and Jason Rofeh.

Schafa Massaji appeals from the judgment entered following a five day bench trial dissolving Serengeti Tea Company (Serengeti), finding Massaji responsible for $1,183,157 as his share of Serengeti's net liabilities prior to the date of dissolution, and awarding Mark Rofeh, Massaji's uncle and partner in Serengeti, $24,000 on Rofeh's cause of action for breach of fiduciary duty.  Massaji contends the trial court erred in ruling the Serengeti partnership was dissolved in 2009 when he filed this lawsuit rather than in 2005 when he ceased participating in the management of the enterprise, finding him liable for predissolution partnership loans and losses and retrying issues finally resolved in a prior arbitration between Massaji and Rofeh.  We modify the judgment to correct an obvious mistake (as to which all parties agree) and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Massaji's Role as Manager of Serengeti; the Parties' Estrangement*

Rofeh started Serengeti, originally known as Savannah Tea Company, in 1993 with his nephew (Massaji's cousin) David Soumekh.  Soumekh had previously worked for a company that sold packaged ice tea mixes to restaurants and hotels.  Rofeh provided the initial capital investment of $50,000; Soumekh operated the business.  There was no written partnership agreement.

In 1996 Massaji's brother Daniel Massey also began working at the company as another employee/owner.  Massaji joined the company in 1997, contributing his services as manager in return for a 15 percent interest in Serengeti.  Massaji subsequently acquired an additional 10 percent interest in the partnership from Soumekh.  Effectively functioning as the company's chief executive officer, Massaji, with the help of Soumekh and Massey, developed a hot tea product based on a tea stick and brought the company close to the point of profitability.  Over the years Massaji, who handled the company's finances, made a series of loans to Rofeh and/or Serengeti to help support Serengeti's operations, as the business was not yet generating sufficient earnings to meet all of its expenses.  Rofeh also made additional capital investments.

2

According to Massaji, although he was an owner/partner of Serengeti, Rofeh told him neither he nor the other nephews working in the business would be responsible for any losses suffered by the company during these early start-up years. In addition, Massaji understood that Serengeti would not repay any of Rofeh's investments in the company until it was profitable and had cash on hand, however long that took. Once the company generated a profit, all the partners (that is, Rofeh and his nephews) would share the profits in proportion to their ownership shares. Rofeh acknowledged this understanding with Soumekh and Massey, but insisted his arrangement was different with Massaji, who, unlike his cousins, was an experienced and successful businessman when he came to Serengeti. Massaji drafted an incomplete, undated and unsigned one-page partnership agreement that identified Rofeh as holding a 50.1 percent voting interest and 35 percent ownership interest in the company; the other owners were identified as Massaji, 20 percent; Soumekh, 35 percent; and Massey, 10 percent.

In early 2005 Rofeh announced he was going to become more active in Serengeti and would be bringing his son into the business as a salaried employee. At the same time, according to Massaji, Rofeh became verbally abusive toward him. Massaji testified he felt he was being pushed out after working for years with little or no salary to create a successful business. Massaji stopped working for Serengeti on July 5, 2005 and, in an August 6, 2005 letter to Rofeh, memorialized several of the serious disagreements between the two men regarding the continued operation of Serengeti. In his letter Massaji indicated he did not intend to return to the business.

When Massaji stopped working at Serengeti, according to Rofeh, he took with him many of the company's files and retained sole access to the business's email account. Massaji refused Rofeh's requests to return these materials, to provide the password for the email account or otherwise to assist Rofeh in maintaining ongoing business operations after his departure. Other employees also left Serengeti at the same time, apparently at the encouragement of Massaji. As a result, Rofeh testified, the business was in chaos and lost significant productivity for many months. During this entire period

3

(that is, from July 2005 onward), Massaji's name remained on Serengeti's bank account; and in October 2009—more than four years after he had stopped working at Serengeti and 10 months after filing the instant lawsuit—Massaji made a withdrawal from that account using his still valid signature authority.

2. *The 2006 Arbitration Between Massaji and Rofeh and Subsequent Judicial Proceedings Regarding the Arbitration Award*

Two points of dispute following Massaji's departure from Serengeti concerned the balance due on Massaji's loans (the parties disagreed as to the amounts Rofeh had repaid) and the extent of Massaji's ownership interest in the business (Rofeh contended Massaji held only a 15 percent interest, insisting he had not acquired an additional 10 percent from his cousin). In June 2006 Massaji, on the one hand, and Rofeh and Serengeti, on the other hand, entered into a written agreement to resolve through binding arbitration any dispute regarding Massaji's loans and the nature and extent of his equity interest in Serengeti, as well as any accounting relating to those issues. Rofeh signed the agreement twice, once for himself and then again on behalf of Serengeti. By handwritten interlineation, the parties agreed to represent themselves, without counsel, in the arbitration proceedings.

The arbitration hearing took place on October 25, 2006. As provided in the arbitration agreement, the men represented themselves. Each testified and offered exhibits consisting of cancelled checks, balance sheets, tax returns, bank statements and invoices from the business, as well as statements as to their positions on the evidence.

In his final award, issued on November 17, 2006, the arbitrator, retired Los Angeles Superior Court Judge Sherman W. Smith, Jr., credited Massaji's evidence of the sums he had loaned to Serengeti and the amount of Rofeh's repayments, as set forth on a schedule prepared by Massaji. Judge Smith further found Massaji had been given a 15 percent interest in the company when he started working and had obtained another 10 percent from his brother (corrected to "cousin" in the arbitrator's subsequent, untimely clarification of the final award). Finally, Judge Smith found Rofeh's argument that Massaji had mismanaged Serengeti was unsupported by the evidence and "the statement

4

that [Massaji] agreed to work full time for seven years without pay is not credible." The arbitrator awarded Massaji $212,963.71 on his claim for money damages, plus interest of 12 percent annually compounded on the unpaid balance from June 16, 1995 to November 15, 2006. The award was against Rofeh individually and Serengeti "jointly and severally." Judge Smith also awarded Massaji a 25 percent interest in Serengeti. On December 19, 2006, following a written request from Massaji, Judge Smith issued a clarification of final award, which declared Massaji was not responsible for the debts of the business and his interest in the company was to be paid from operation profits or profits on the sale of the business.

Massaji filed a petition in superior court to confirm the award; Rofeh petitioned to vacate and set it aside. Rofeh argued, in part, Judge Smith did not have the requisite accounting or tax background specified in the parties' arbitration agreement and, therefore, was not qualified to act as arbitrator. In addition, Rofeh asserted the arbitrator had acted in excess of his authority by making Serengeti jointly and severally liable for the damage award even though the company was not a party to the arbitration. The court granted Rofeh's petition to vacate and set aside the arbitration award, concluding Judge Smith was not a qualified arbitrator under the terms of the parties' arbitration agreement and found "[t]he parties were not informed of Judge Smith's lack of qualification."

We reversed, holding the arbitrator's lack of accounting or tax expertise did not support the trial court's order denying Massaji's petition to confirm and granting Rofeh's petition to vacate the arbitration award. (*Massaji v. Rofeh* (Nov. 17, 2008, B202059) [nonpub. opn.] (*Massaji I*).) We explained that, although clearly expressing a preference for an arbitrator with a tax or accounting background, neither the arbitration agreement itself nor the parties' arbitration demand specified that only an individual with those qualifications could serve as an arbitrator. (*Id.* at pp. 8-9.)

We also held the arbitrator had not exceeded his authority by awarding damages jointly and severally against Rofeh and Serengeti even though the demand for arbitration jointly submitted by Massaji and Rofeh did not identify Serengeti as a party, pointing out

5

that the parties' binding arbitration agreement expressly applied not only to Rofeh but also to Serengeti, which had signed the agreement through an authorized principal (Rofeh). In connection with this portion of our opinion, we observed, "[B]ecause the parties agreed to forego lawyers and to represent themselves in the arbitration proceedings, it was apparently contemplated that Rofeh would appear at the arbitration for himself and the company." We then stated, "[W]here the parties' agreement clearly called for Serengeti to participate in the arbitration and any such participation necessarily would have been through Rofeh himself since he and Massaji were Serengeti's only partners, we believe it was reasonable for the arbitrator to conclude Serengeti, a party to the arbitration agreement, was a party to the arbitration proceeding as well." (*Massaji I, supra,* at p. 15, fn. omitted.)

Finally, we held the arbitrator's clarification of the final award, which stated Massaji was not responsible for the debts of the business, was invalid because it was made more than 30 days after issuance of the award itself and, therefore, was outside the time limit specified by Code of Civil Procedure section 1284. Because resolution of the dispute concerning Massaji's percentage interest in the company submitted by the parties to arbitration "[was] not dependent on a determination of Massaji's responsibility for Serengeti debts or liabilities," we held the final award could properly be affirmed while disregarding the invalid clarification.

### 3. *Massaji's Lawsuit To Dissolve the Partnership and Massaji's and Rofeh's Cross-claims for Breach of Fiduciary Duty; the Trial Court's Decision*

On January 13, 2009 Massaji filed a complaint and on April 7, 2009 a first amended complaint alleging causes of action for partnership dissolution, breach of fiduciary duty, accounting and appointment of a receiver against Rofeh and Serengeti, as well as Rofeh's son Jason Rofeh and a new entity formed by Rofeh and his son called Serengeti Tea LLC. On July 24, 2009 Rofeh and Serengeti filed a cross-complaint against Massaji for breach of fiduciary duty and an accounting.

The court took live testimony (including from Massaji, Massey, Mark Rofeh and Jason Rofeh), received documentary evidence and heard oral argument in a five-day

6

bench trial conduced in late 2012 and early 2013. The court thereafter prepared a proposed statement of decision and invited the parties to submit objections and proposed modifications. After considering the parties' further filings, the court issued its statement of decision on March 29, 2013 and entered final judgment on May 16, 2013 dissolving the Serengeti with a date of dissolution of January 13, 2009 (the date Massaji filed his complaint) and finding by an accounting of the partnership's financial affairs that its assets as of the date of dissolution totaled $217,127, its liabilities totaled $4,949,756, and Massaji's share of net liabilities amounted to $1,183,157. The court further found in favor of Rofeh on his cause of action for breach of fiduciary duty and against Massaji on his breach of fiduciary duty claim. Rofeh was awarded an additional $24,000.[1]

Based on the partial, unsigned partnership agreement prepared by Massaji, the parties' various discussions and their conduct, the court found Massaji, Rofeh, Soumekh and Massey had entered into an "oral and/or implied-in-fact at-will partnership agreement" with no definite term. Massaji initially owned 15 percent and later 25 percent. The court further found there was no agreement on how the sharing of either profits or losses would work: "So long as Rofeh continued to fund the company's needs, the parties did not have to decide how to allocate losses in the sense of debts to third parties."

The court further found that Massaji's conduct in 2005 (discontinuing any management services for the business) was not a formal withdrawal and did not effectuate a dissolution of the partnership. To the contrary, the court explained, Massaji continued to behave as if he remained an owner of the business including during the arbitration proceedings where he asserted an ongoing 25 percent interest in Serengeti. Because Massaji's complaint requested dissolution, as did Rofeh's cross-complaint, and together they owned more than 50 percent of the partnership, the court ruled Serengeti

---

[1] An earlier trial of the case, which had resulted in a partial judgment in favor of Rofeh, was nullified and the partial judgment vacated after Massaji successfully moved to disqualify the judge who had been presiding over the matter.

was dissolved as of the filing of the lawsuit. The court accepted as credible and reliable the testimony of Jason Rofeh and Rofeh's expert witness regarding the amounts of Serengeti's total assets and liabilities, including its obligations to Rofeh and third parties for loans made to the entity prior to its dissolution.

With respect to the breach of fiduciary duty claims, the court concluded Massaji failed to prove Rofeh had breached any duty owed to Massaji or Serengeti but that Rofeh proved by a preponderance of the evidence Massaji had breached his duties to Rofeh "and/or" the partnership after he stopped working for the business in July 2005 by improperly withholding the password to the company's email account, removing important customer records, withholding contact information for Serengeti employees after either encouraging or allowing them to abandon their employment and taking steps to start a competing business: "[H]is petulance and his refusal to cooperate with Mark and Jason Rofeh was a breach of his duty of loyalty to [Serengeti] and his duty to place [Serengeti's] interest ahead of his own interests." The court awarded $24,000 in damages, described as losses attributable to a decline in productivity as a result of the lack of trained employees after Massaji left Serengeti.

## DISCUSSION

1. *The Judgment Must Be Modified To Correct the Erroneous Statement of Massaji's Post-dissolution Responsibilities*

Paragraph 6 of the judgment signed by the trial court provided, "Pursuant to *Urzi v. Urzi*, 140 Cal. App. 2d 589 (1956), plaintiff and cross-defendant Schafa Massaji is obligated for any share of liabilities incurred by or on behalf of Serengeti Tea Company after the date of dissolution of the partnership of January 13, 2009. By the same token, he is not entitled to any profits or assets of the partnership gained after the date of dissolution. All such liabilities and assets are Mark Rofeh's."

Massaji contends the initial sentence in this paragraph, obligating him under the circumstances of this case to share in post-dissolution liabilities, is an incorrect statement

8

of the holding of the *Urzi* case[2] and is inconsistent with the final sentence of the paragraph, which properly provides that all post-dissolution assets and liabilities are Rofeh's. Rofeh concedes in his respondent's brief that correction of this portion of the judgment is necessary: "This appears to have been a typographical error whereby the word 'not' was inadvertently omitted." We agree with the parties and order correction of the judgment to reflect that Massaji is not obligated for any share of partnership liabilities after the January 13, 2009 dissolution of Serengeti.

2. *The 2006 Arbitration Award Did Not Preclude Litigation of Every Issue Relating to Events that Predated the Arbitration Proceedings*

In the trial court and again on appeal Massaji argues the 2006 arbitration proceedings and award, which we ordered the trial court to confirm as corrected in *Massaji I*, precluded Rofeh from litigating issues relating to events that had occurred prior to the arbitration, specifically Massaji's obligation on loans made by Rofeh to Serengeti and Rofeh's claim that Massaji had breached fiduciary duties to Serengeti immediately after he stopped working for the business in July 2005. The trial court rejected this argument, explaining the parties' agreement to arbitrate identified only two issues to be resolved: (1) the nature and extent of Massaji's loans to Rofeh for the benefit of Serengeti and the unpaid balance, if any, on those loans; and (2) the nature and extent of Massaji's equity interest in Serengeti. The arbitrator was not asked to determine whether Serengeti continued to exist (that is, had it already been dissolved) or whether Massaji's conduct constituted a breach of his duty of loyalty to the business.

The trial court's description of the limited issues presented in the arbitration proceeding was correct. Whether the business was a partnership; if so, whether and when

---

[2] The court in *Urzi v. Urzi, supra*, 140 Cal.App.2d 589 held, although the general rule is that a partner who continues a business after dissolution is accountable to the retiring partner for profits acquired after dissolution and before termination of the partnership, if the retiring partner is indebted to the partnership and thus has no interest in partnership assets or capital at the time of dissolution, the remaining partners have no obligation to account for post-dissolution partnership activity. (*Id.* at pp. 593-594.)

9

it had been dissolved; and what responsibility each of the owners/partners had for the business's debts other than Rofeh and Serengeti's liability to Massaji for loans he had made to the business were questions not presented or resolved in the arbitration proceedings. Indeed, in striking as untimely the arbitrator's post-award clarification and ordering the trial court to confirm the award as corrected in *Massaji I*, we observed the issues decided by the arbitrator were not "dependent on a determination of Massaji's responsibility for Serengeti's debts or liabilities."[3] Similarly, neither Masssaji's claim that Rofeh had breached fiduciary duties owed to him nor Rofeh's cross-claim that Massaji had breached fiduciary duties after July 2005 was presented to the arbitrator.[4]

Seemingly conceding that the accounting and fiduciary duty causes of action decided by the trial court were not actually litigated in the arbitration proceeding, in his reply brief Massaji argues the claims are nonetheless precluded by the doctrine of res judicata because they "could have been litigated in the prior proceeding." (See, e.g., *Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 557 ["[r]es judicata not only precludes the relitigation of issues that were actually litigated, but also precludes the litigation of issues that could have been litigated in the prior proceeding"].) Although Massaji is correct that a private arbitration award has the same res judicata effect as a court judgment (*Sanchez v. Carmax Auto Superstores California, LLC* (2014)

---

[3] As discussed, in response to a request for clarification from Massaji after the final award had been made, the arbitrator found that Massaji, although a 25 percent owner of Serengeti, was not responsible for any of the debts of the business. We held the clarification was untimely and therefore invalid.

[4] The arbitrator did state in connection with his determination that Massaji was given a 15 percent interest when he joined the business in 1997 and thereafter obtained another 10 percent interest in Serengeti, "Rofeh's argument that [Massaji] mismanaged the company is unsupported by the evidence and the statement that [Massaji] agreed to work full time for seven years without pay is not credible." Nothing in those findings, which related to Massaji's management of Serengeti prior to July 2005, suggests the arbitrator was asked to resolve Rofeh's claim that Massaji breached his duty of loyalty to Serengeti after leaving the company by refusing to disclose the company's email address, return customer files or otherwise assist Rofeh and his son to maintain the business.

10

224 Cal.App.4th 398, 407 ["""'[t]he doctrine of res judicata applies not only to judicial proceedings but also to arbitration proceedings'"""]; *Wade v. Ports America Management Corp.* (2013) 218 Cal.App.4th 648, 653 [same]; see also *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 824, fn. 2), he misperceives the doctrine's applicability here.

Under the doctrine of res judicata a valid, final judgment on the merits precludes parties or their privies from relitigating the same "cause of action" in a subsequent suit. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896; *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795.) "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. . . . [Citation.] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen*, at pp. 896-897, citation and fn. omitted; see *Wade v. Ports America Management Corp., supra,* 218 Cal.App.4th at p. 657.)

California law defines a "cause of action" for purposes of the res judicata doctrine by analyzing the primary right at stake: "[A] 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] A pleading that states the violation of one primary right in two causes of action contravenes the rule against 'splitting' a cause of action. [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.) "'[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.'" (*Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160; accord, *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1170.)

11

Rofeh's claim that Massaji breached his fiduciary duties to Seregenti post-July 2005 involved a separate primary right—different wrongful acts causing new and different injury—distinct from the primary rights at issue in the arbitration proceedings (Rofeh's claim to an ownership interest in Serengeti and his assertion of unpaid balances on personal loans to the business). Thus, even if Rofeh could have expanded the arbitration to include his breach of fiduciary duty claim, the failure to do so does not preclude him from pursing the claim in this litigation. Moreover, an important exception to the general rule of indivisibility of a primary right permits a second action on a different legal theory if the plaintiff was precluded from asserting that theory in the first action because of limitations on the subject matter jurisdiction of the first forum. (*Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 344; *Le Parc Community Assn. v. Workers' Comp. Appeals Bd., supra,* 110 Cal.App.4th at p. 1170.) Because the parties expressly limited the scope of the issues to be presented to the arbitrator, litigation of all other issues, whether or not involving the same primary rights as the arbitration proceedings, was preserved for the current forum.

3. *Substantial Evidence Supports the Trial Court's Finding the Partnership Was Not Dissolved in July 2005*

The California Revised Uniform Partnership Act (RUPA) applies to all partnerships as of January 1, 1999. (Corp. Code, § 16111, subd. (b).) With respect to a partnership by will, under RUPA "[a] partnership is dissolved, and its business shall be wound up . . . [¶] . . . by the express will to dissolve and wind up the partnership business of at least half of the partners . . . ." (Corp. Code, § 16801; see *Corrales v. Corrales* (2011) 198 Cal.App.4th 221, 227.) Unlike prior partnership law, which provided a partnership automatically dissolved and had to be reconstituted when a partner died or withdrew unless the partnership agreement specifically provided otherwise, RUPA introduced the concept of "dissociation," which permits the remaining partners to continue the partnership business without the withdrawing partner and without having to reform the business association. (*Corrales*, at pp. 226-227; see Corp. Code, §§ 16601, subd. (1) [dissociation occurs when partner gives notice of his or her express will to

withdraw as a partner]; 16602, subd. (a) ["[a] partner has the power to dissociate at any time, rightfully or wrongfully, by express will pursuant to paragraph (1) of Section 16601"].) "When a partner withdraws from a two-person partnership, however, the business cannot continue as before. One person cannot carry on a business as a partnership." (*Corrales*, at p. 228; see Corp. Code, § 16101, subd. (9) [partnership is "an association of two or more persons to carry on as coowners a business for profit"].)

Massaji does not challenge the trial court's ruling that Serengeti was an oral or implied-in-fact at-will partnership, but contends the court erred in finding there were three partners (Massaji, Rofeh and Massey) rather than only two (Massaji and Rofeh) in July 2005 and in further determining his decision to stop working for Serengeti at that time did not constitute a withdrawal from the partnership that caused its dissolution by operation of law. Substantial evidence supports both findings of the trial court.

As to the number of partners, Masaji, Rofeh and Massey all testified that Massey (Massaji's brother) was at one time a 10 percent owner of Serengeti; and documents prepared by Massji reflected that ownership share. Massey, who had been called as a witness on behalf of Massaji, testified he understood that he continued to be a partner in the enterprise; and no evidence was presented he had ever withdrawn or been expelled from the partnership.[5] Nothing more is necessary to support the trial court's finding. (See *Feresi v. The Livery, LLC* (2014) 232 Cal.App.4th 419, 424 [testimony of a single witness is sufficient to constitute substantial evidence]; *Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613 [same]; *Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 1150, 1155 ["'[N]either conflicts in the evidence nor "'testimony which is subject to justifiable suspicion . . . justif[ies] the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'"

---

[5] The negative pregnant of Massaji's observation in his opening brief that Massey "has had no affiliation with [Serengeti] since 2006" is that his brother continued to be involved with the business in July 2005—the critical time for purpose of this issue.

13

[Citations.] Testimony may be rejected only when it is inherently improbable or incredible, i.e., '"unbelievable *per se*,"' physically impossible or '"wholly unacceptable to reasonable minds"'"].)

To be sure, in the course of explaining why the arbitrator had properly awarded damages jointly and severally against Rofeh and Serengeti even though the joint demand for arbitration did not identify Serengeti as a party, we said in *Massaji I*, "the parties' agreement clearly called for Serengeti to participate in the arbitration and any such participation necessarily would have been through Rofeh himself since he and Massaji were Serengeti's only partners . . . ." (*Massaji I*, at p. 15.) However, there had been no factual finding by the arbitrator regarding the number of partners in Serengeti (it was far outside the scope of any issue submitted); and our conclusion that Rofeh participated in the arbitration on behalf of Serengeti as well as himself, although reinforced by our observation, was in no way dependent upon it. Neither principles of collateral estoppel nor the law of the case precluded the trial court from resolving the issue when presented by the case at bar.

In any event, whether there were two or three partners in July 2005 is of no legal consequence given the trial court's further finding, also supported by substantial evidence, that until he filed the instant lawsuit, "Massaji never announced or gave the other partners any notice of his dissociation or withdrawal from the partnership." (See Corp. Code, §§ 16601, subd. (1), 16801, subd. (1) [notice of "express will" to withdraw required].) The correspondence exchanged by Massaji and Rofeh after he quit working for Serengeti in July 2005, although stating that Massaji would not return to the business, did not indicate he intended to end his ownership interest or request a winding up of partnership affairs. For his part, Rofeh's letter in response confirmed Massaji's continued ownership "even though you may no longer put your time in." As the trial court emphasized, Massaji did not dispute this description of his continuing status as an owner. In addition, the trial court reasonably interpreted the parties' joint demand for arbitration, which stated that Massaji had left his position as manager in 2005, but

14

described an ongoing dispute as to the extent of his ownership interest in the company, as inconsistent with his contention he had withdrawn from the partnership the prior year.[6] Finally, the evidence of Massaji's post-July 2005 conduct with regard to maintaining business files and company information and ultimately writing a check as an authorized signatory on a partnership bank account further support the trial court's factual finding.

4. *Substantial Evidence Supports the Trial Court's Finding Regarding Massaji's Responsibility for Repayment of Loans*

As a partner in Serengeti, Massaji was responsible for his aliquot share of the partnership's net liabilities at the date of dissolution (January 2009). In addition to disputing his status as a partner post-July 2005, Massaji contends the evidence was insufficient to support the trial court's calculations in accounting for the partnership's financial affairs—particularly Serengeti's obligations on loans from third parties. However, although improperly ignored by Massaji in his opening brief (cf. *Ajaxo Inc. v. E\*Trade Group, Inc.* (2005) 135 Cal.App.4th 21, 50 [appellant's failure to discuss evidence supporting trial court's findings excuses appellate court from need to address contention of insufficient evidence]), extensive testimony and documentary evidence were introduced, including expert opinion testimony, regarding Serengeti's assets and liabilities based in part on properly authenticated entries in the business's general ledger and underlying materials (for example, bank statements and checks). The trial court found this evidence to be credible and reliable. The determination of partnership assets and liabilities (including the nature of the interest obligation on loans made to Serengeti)

---

[6] Responding to the trial court's analysis of his post-July 2005 conduct and specifically its observation that he took no action to initiate a winding up of partnership affairs for several years after he stopped working for the business, Massaji explained, until this court's November 2008 decision in *Massaji I* confirmed the extent of his ownership of Serengeti, "Massaji could not have been certain that he had any interest." This lawsuit was initiated, he noted, only two months later. Although this explanation rebuts any suggestion Massaji was dilatory in pursuing his rights, it does nothing to support his contention he expressly withdrew from the partnership in July 2005.

15

at dissolution and Massaji's responsibility for his share of net liabilities was supported by sufficient evidence.

5. *Massaji Has Presented No Basis for Reversing the Finding He Breached His Fiduciary Duty to Serengeti*

As discussed, Massaji incorrectly asserts any claim regarding his post-July 2005 breach of fiduciary duty is barred by the doctrine of res judicata. He also contends, albeit only in his reply brief, he could not have breached any duties to Serengeti after July 2005 because he had withdrawn from the partnership and, as a result, the partnership dissolved by operation of law when he stopped working for the business. This belated argument also fails: As explained, substantial evidence supports the trial court's findings the partnership continued until Massaji filed this lawsuit in January 2009, where for the first time he provided express notice of his intent to dissolve the partnership. Accordingly, as a partner of Serengeti throughout 2005 and 2006, Massaji owed a continuing duty of loyalty to the company, which he breached by obstructing business operations through removal of customer files, withholding employee contact information and refusing to disclose the password to the company's email account, as described in testimony from Rofeh accepted as credible by the trial court.

## DISPOSITION

The judgment is modified to reflect that Massaji is not obligated for any share of partnership liabilities after the January 13, 2009 dissolution of Serengeti. As modified, the judgment is affirmed. Rofeh is to recover his costs on appeal.


PERLUSS, P. J.

We concur:

WOODS, J.                    FEUER, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.